Solomon Bernstein, complainant,

*v.*

New Jersey Bankers Securities Company, a corporation, defendant.

[Decided September 2d, 1930.]

*Messrs. Leber & Ruback,* for the complainant.

*Mr. Isadore Glauberman,* for the defendant.

Backes, V. C.

An appeal has been taken from a partial allowance to the receivers and their counsel of $10,000 each. The appeal would seem insincere when it is considered that the receivers handled an estate of $2,000,000, in precarious circumstances, calling for the utmost diligence, constant attention and exceptional business experience and judgment to conserve the assets to a minimum of loss. The court is fully informed of their labors, their cares and anxieties in the discharge of their trust; it having been at all times in intimate touch with them and advised in the problems they had to meet and resolve; and there were not a few. Their administration was not merely of gathering up the fragments of a defunct concern for distribution. There were instances in which, through their salesmanship and protective measures, they earned far more for the company than the fees they ask.

It is as impossible in retrospect, to measure their savings to the estate as it is the losses the estate might have suffered had they been less "on their toes;" less ardent. Of course, they but discharged their duty. However, a duty well done is to be appraised not in hours or days of labor, that is an element, but as well as the value of the services in promoting the assets to the best advantage.

The appeal questions the court's power to make allowances for want of jurisdiction to appoint equity receivers. The question of jurisdiction to entertain the bill and appoint receivers was not raised at the original hearing. Indeed, at that time things were in such chaos that all concerned looked to the court for relief. The board of directors had disintegrated, following a bitter strife among the members over the attempt of the majority to hand over what was then nearly $4,000,000 of cashable assets (Hobart Trust had not then collapsed) to Weinberger's friend Spielberg for his worthless stock in his Equitable Finance Company. Had the deal not been blocked by injunction in the first Bernstein suit all would have been wiped out and Weinberger, in all likelihood, would by now have been relieved of liability on his $2,300,000 note to the company given to account for his earlier misapplication of its funds, for there can be little doubt that he had arranged for that with Spielberg. All but two or three of the directors had quit and the affairs were in the hands of the president, who was in Europe, and he had left the funds in charge of his lady secretary. The Hobart Trust, in which the company owned thirty thousand of the forty thousand shares, had been closed the day before the bill was filed; a bank in New York in which it held control was on the point of being taken over by the federal government and another in this state was in danger of the same fate. It is from an order appointing equity receivers, in this emergency, to salvage the wreckage and to avoid greater catastrophy that an appeal has been taken. The court entertains no question of its power nor of its duty in the circumstances.

The receivers turned most of the securities into liquid assets; and the rest is being prudently liquidated to obtain

the best price. The court directed measures for part distribution of the liquid assets and upon the return of an order to show cause there was objection, and also protest against the fees asked by the receivers and their counsel of $25,000 each, of which they had given notice. Leaders formed groups of solicited stockholders, each having for their object the control of the company, or, rather, the money. The cash had peculiar attraction; times were depressed and each group in its own way saw promising opportunities for manipulation and money making. One of the group (with the aid of the Weinberger controlled controlling block of stock, present at the election to make up a quorum, but not voting as promised the court of errors and appeals) claimed to have elected a board of directors and claiming to represent the company petitioned for the return of the assets and the discharge of the receivers. A minority of the stockholders and some of the groups wanted distribution and many of the stockholders were indifferent; not responsive. After further and prolonged hearing, on notice to the stockholders, a final decree was entered enjoining the company from exercising its franchise and statutory receivers were appointed. The equity receivers were appointed. There may be merit in an appeal from the final decree, but none is taken. Counsel states that he intends standing or falling by his appeal from the interlocutory decree appointing equity receivers and that an appeal is not intended from the final decree if he fails. This assurance against the delay of a second appeal from the final decree may readily be avoided by dismissing present counsel. Already inspired appeals have been taken by a stockholder from the decree and order now before the court of errors and appeals.

The court feels in duty bound to respect the appeal from the intermediate order, though none has been taken from the superseding decree, and to await the judgment of the court of errors and appeals before making distribution. The receivers having performed their more onerous and valuable services, and pending the appeal have but to prudently invest the cash at the highest yield and liquidate the few remaining

securities, the court proceeded to fix their compensation, but after a hearing, which was interrupted by the end of the day's work, and a direction to take further testimony before a master, which was recalled, concluded that the appropriate and more practical course was to make a partial allowance and to defer fixing compensation until final distribution, after the appellate court shall have approved or disapproved its conduct of the cause. Temporary allowances to receivers and counsel, in circumstances like the present, is common practice in this court.